*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Parole of CHARLES LEE.

---

MONROE COUNTY PROSECUTOR,

      Appellee,

v

CHARLES LEE,

      Appellant,

and

MICHIGAN PAROLE BOARD,

      Intervenor.

UNPUBLISHED
January 23, 2020

No. 347539
Monroe Circuit Court
LC No. 18-141225-AP

---

Before: RIORDAN, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

In this action regarding parole, Charles Lee appeals by leave granted[1] the January 10, 2019 opinion and order of the trial court reversing the July 18, 2018 decision of the Michigan Parole Board (the Board) to parole Lee. We now reverse the trial court and reinstate the decision of the Board.

---

[1] We originally denied Lee's delayed application for leave to appeal. *In re Parole of Lee*, unpublished order of the Court of Appeals, entered April 8, 2019 (Docket No. 347539) (STEPHENS, J., would have granted the delayed application). However, on July 29, 2019, in lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration as on leave granted. *In re Parole of Lee*, ___ Mich ___; 931 NW2d 312 (2019).

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

In 1988, Lee committed armed robbery and first-degree criminal sexual conduct (CSC-I). After his 1989 jury conviction on those charges, he was sentenced to concurrent terms of 15 to 30 years' imprisonment each. Upon his conviction and sentence, the Monroe County Prosecutor voluntarily dismissed two other cases arising out of two other instances where Lee had been bound over for trial on charges of CSC-I, felonious assault, and assault with the intent to commit armed robbery. In 2006, the Board granted Lee parole. He was released in January 2006, and by the end of March 2006, he had been arrested and charged with aggravated stalking of a 15-year-old victim. Lee was convicted after a bench trial and, after some appellate procedure not relevant to this case, sentenced to 46 months' to 10 years' imprisonment to be served consecutively to the remaining time on his prior convictions.

The Board again granted Lee parole in 2010. This time, however, the Monroe County Prosecutor applied for leave to appeal with the trial court. After an ex parte order staying parole was entered, the Board internally reversed its own decision. Almost the identical situation occurred in 2016. Subsequently, on July 13, 2018, the Board granted Lee parole. The Monroe County Prosecutor once again applied for leave to appeal, beginning the instant case. The trial court entered orders staying Lee's release pending the outcome of the appeal, granted the Monroe County Prosecutor's application, and permitted the Board to intervene in the case. The Monroe County Prosecutor argued that the Board had abused its discretion by granting parole to Lee without reasonable assurances that he would not become a menace to society or to the public health. The Board disagreed, citing that it had properly performed its function. Lee, who appeared at the trial court's appellate hearing via telephone, agreed with the Board. The trial court, however, entered a written opinion and order reversing the decision of the Board, opining that the Board had abused its discretion by failing to consider certain circumstances of Lee's criminal history, prior parole, and behavior while in prison. This appeal followed.

## II. PAROLE

Lee argues that the trial court erroneously substituted its judgment for that of the Board and that the Board did abuse its discretion in granting Lee's parole. We agree.

### A. STANDARD OF REVIEW

"Judicial review of the Board's decision to grant parole is limited to the abuse-of-discretion standard." *In re Parole of Spears*, 325 Mich App 54, 59; 922 NW2d 688 (2018) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "Importantly, a reviewing court may not substitute its judgment for that of the Board." *In re Parole of Elias*, 294 Mich App 507, 538-539; 811 NW2d 541 (2011).

### B. GENERAL LAW

"Either the prosecutor or the victim of an offense may appeal in the circuit court when the Board grants a prisoner parole." *Elias*, 294 Mich App at 538, citing MCL 791.234(11) and *Morales v Parole Bd*, 260 Mich App 29, 35; 676 NW2d 221 (2003). "The prosecutor, as the challenging party, 'has the burden to show either that the Board's decision was "a clear abuse of

discretion" or was "in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation." ' " *Spears*, 325 Mich App at 59, quoting *Elias*, 294 Mich App at 538, quoting MCR 7.104(D)(5).[2] "Generally, matters of parole lie solely within the broad discretion of the [Board] . . . ." *Spears*, 325 Mich App at 60 (quotation marks and citation omitted; alterations in original). "However, 'the Legislature has clearly imposed certain statutory restrictions on the Board's exercise of its discretion.' " *Id.*, quoting *Elias*, 294 Mich App at 521-522. In that regard, "[s]tatutorily mandated parole guidelines form the backbone of the parole-decision process." *Spears*, 325 Mich App at 60 (quotation marks and citation omitted). Where, as here, a prisoner's "parole-guideline scored placed [them] in the high-probability-of-parole category, the Board was required to grant parole unless it found 'substantial and compelling reasons' to deny." *Elias*, 294 Mich App at 542.

This Court previously has described "substantial and compelling reasons" for denial as including "an objective and verifiable reason that keenly or irresistibly grabs our attention . . . and exists only in exceptional cases." *Id.* (quotation marks and citation omitted). This Court also noted, however, that "[u]nder the parole guidelines . . . the Board 'is not held to a requirement of absolute objectivity.' " *Id.* at 542-543, quoting *Killebrew v Dep't of Corrections*, 237 Mich App 650, 655; 604 NW2d 696 (1999). "Further, ' "[a] prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." ' " *Spears*, 325 Mich App at 60, quoting *Elias*, 294 Mich App at 544, quoting MCL 791.233(1)(a) (alteration in *Elias*). With that in mind, "[t]he Board should consider a prisoner's sentencing offense when determining whether to grant parole to a prisoner, but the Board must also look to the prisoner's rehabilitation and evolution throughout his or her incarceration." *Spears*, 325 Mich App at 60 (quotation marks and citation omitted). "Giving the various static and dynamic factors similar weight allows the Board to effectuate both the punitive and rehabilitative features of the corrections system." *Elias*, 294 Mich App at 544.

## C. APPLICABLE LAW AND ANALYSIS

Lee argues that, instead of finding that the Board abused its discretion in granting his parole, the trial court actually substituted its judgment for the Board. We agree.

In reversing the decision of the Board, the trial court first relied on Lee's Static-99R and Stable-2007 scores, which indicated that Lee was in "the moderate-high priority category for supervision and intervention in comparison to other sexual offenders." The trial court continued by referencing specific concerns noted in the analytical tools, stating that even after completion of the sex offender treatment (SOT) program in 2016, "Lee showed clinically significant concern in among other things sex drive and preoccupation, impulsivity[,] and hostility towards women." Upon review of the record, that statement of fact by the trial court is simply untrue. In the SOT

---

[2] As this Court recently explained in *Spears*, 325 Mich App at 59 n 3: "The court rule cited in *Elias* was subsequently renumbered. The content of that court rule may now be found at MCR 7.118(H)(3)."

termination report prepared in 2016, the only area of "clinically significant concern" was in the area of cooperation with supervision. Instead, Lee was reported to have "some concern" in the areas mentioned by the trial court. Indeed, when the test was re-administered in the qualified mental health professional evaluation (QMHPE) in 2018, there was no "clinically significant concern" in any areas. More, there was "no concern" regarding the issues of sex drive and preoccupation and impulsivity. There was "some concern" regarding hostility toward women.

In addition to misstating the record, the trial court also failed to consider that the Board also had further evidence of rehabilitation that specifically mitigated the Static-99R and Stable-2007 scores. In particular, the SOT termination report concluded that, despite the moderate-high risk level associated with the mentioned analytical tools, relevant research indicated that completion of therapy, like Lee's completion of the SOT program, had been shown to reduce the probability of sexual recidivism by 30%. Additionally, the Board's record contained evidence that in addition to completing the SOT program, Lee also successfully completed the violence prevention program (VPP), the sex offense didactics program, a program regarding victim empathy, and self-help groups related to sexual offenses. In the case summary report prepared by the Board when considering Lee's parole, the Board specifically noted that they had considered the QMHPE and SOT termination reports, as well as Lee's completion of all of the additional programs. Consequently, the trial court's explanation in regard to the Static-99R score, Stable-2007 score, and the areas of clinically significant concern in the SOT termination report was not sufficient to overcome the broad discretion provided to the Board to consider the entire record before it. In other words, even when the trial court's analysis was not an outright misstatement of the record, it simply disagreed with the weight afforded the cited factors by the Board. "Rather than affording any meaningful deference to the Board, the circuit court substituted its determination that substantial and compelling reasons mandated denial" of Lee's parole. *Elias*, 294 Mich App at 543-544. Such was not grounds to find an abuse of discretion and reverse the Board's grant of parole. *Spears*, 325 Mich App at 60.

Next, the trial court reasoned that the Board failed to consider Lee's November 2017 inter-library request for books that contained sexual content. The trial court cited that the Board had argued that they had "presumably" been aware of the loan request because communication was sent to them by the prison. However, the trial court found that there was no documentary evidence supporting that assertion. Once again, a review of the record reveals that the trial court is incorrect. First, though, as argued by Lee, the trial court was not permitted to simply assume that the Board had not considered the evidence. As stated by this Court in *Elias*, 294 Mich App at 547, where documentary evidence was "part of the record placed before the Board," the trial court is not permitted to "unreasonably and improperly assume[]" that the Board did not "read and consider[] [the documents] before rendering its parole decision." The burden of proving that the Board abused its discretion was on the Monroe County Prosecutor. *Spears*, 325 Mich App at 59. Moreover, "nothing in the statutes, regulations, or caselaw requires the Board to specifically cite the documents it reviewed in rendering its decision." *Elias*, 294 Mich App at 547. Therefore, even if there was no documentary evidence that the Board actually considered Lee's request for the books, the trial court was not permitted to assume that the Board had not done so. *Id*.

Second, even in light of the trial court's legal error of assuming the evidence was not considered, the trial court also made an error of fact. The case summary report prepared by the

Board when considering whether to grant Lee's parole specifically noted that Lee had been asked about the books. The Board noted that Lee provided the same explanation he later gave at oral argument—that he was not aware of the books' contents when he requested them.[3] The Board's apparent decision to believe Lee's explanation was its own to make—the trial court was not permitted to "substitute its judgment for that of the Board." *Id.* at 538-539.

In addition to the reasons actually cited by the trial court in its opinion and order reversing the Board's parole decision, the Monroe County Prosecutor on appeal also argues that there were separate reasons the Board's decision to parole Lee was an abuse of discretion. First, the Monroe County Prosecutor argues that the Board failed to consider the egregiousness of the crimes of which Lee was convicted, the crimes for which the charges had been dismissed, the apparent modus operandi that Lee had adopted, and the speed with which Lee had reoffended after his previous parole. The Monroe County Prosecutor is incorrect that the Board did not consider that evidence.

First, in regard to the egregiousness of Lee's convictions, there can be no doubt that the Board considered those issues. In the case summary report, the Board even provided specific descriptions of those crimes and Lee's explanation for how and why they occurred. Second, the Board also presumably considered the crimes with which Lee had been charged but were voluntarily dismissed by the Monroe County Prosecutor in 1989. As just discussed, when documentation appears in the Board's records, it is not appropriate to simply assume that it did not consider it. In this case, the Board specifically stated that it reviewed the SOT termination report, which in turn, noted that Lee had been charged with crimes in 1988 that had ultimately been dismissed after he was convicted of CSC-I and armed robbery. In addition to that reference in the report, the Board's file also contained letters from the Monroe County Prosecutor that contained descriptions of the charged offenses, as well as the preliminary examination transcripts from those cases, which contained the victims' testimonies. Similarly, the letters from the Monroe County Prosecutor in the Board's record contained allegations that Lee had a modus operandi and was likely to escalate his crimes if released. Finally, the case summary report also specifically discussed that Lee had reoffended within three months of his previous parole.

Considering that evidence, it is clear that the Monroe County Prosecutor's allegation that the Board failed to consider all of that evidence is not supported by the record. To the extent that the Monroe County Prosecutor argues that the Board failed to give adequate weight to those factors, this assertion is also not supported by the record. As this Court has held, although Lee's criminal history is properly considered, it must also be weighed in light of evidence of his rehabilitation. *Spears*, 325 Mich App at 60. In the present case, there is no dispute that the crimes for which Lee was charged and of which he was convicted were egregious and

---

[3] At oral argument during the appellate proceedings before the trial court, Lee stated that he also informed the Board that he only requested the books because they had been referenced in literature provided by one of his self-help groups for sex offenders. While the Board did not make specific reference to that portion of the explanation, it is likely that it contributed to the Board's decision to believe Lee.

concerning. More, his quick re-offense after his first parole is troubling. However, since all of those things occurred, as noted earlier in this opinion, Lee had completed a wide array of programs, many of which involved the prevention of future violent and sexual offenses. Lee was determined to have successfully completed those programs. Further, in considering his completion of those programs, the Board believed the conclusions in the reports that Lee had accepted responsibility for his crimes, felt remorse, and had a good plan to avoid reoffending when he was released. While the Monroe County Prosecutor's preoccupation with the static factors of the crime committed by Lee is understandable, it was not an abuse of discretion for the Board to determine that the significant dynamic evidence of Lee's rehabilitation outweighed them. *Id*. "Giving the various static and dynamic factors similar weight allows the Board to effectuate both the punitive and rehabilitative features of the corrections system." *Elias*, 294 Mich App at 544.

In addition to there being evidence that Lee had been rehabilitated since his 2006 conviction, the Board also instituted a safety net by requiring Lee to be paroled to a residential sex offender program (RSOP). To the extent that the Monroe County Prosecutor has suggested that Lee's parole supervision would be "minimal" on the basis of the supervision summary report found in the Board's record, that argument is without merit. As noted by Lee in this appeal and by the Board before the trial court, the reference to "minimal" supervision in that singular document appears to be a relic of the 2006 parole. Indeed, the document in question specifically references dates in 2006 and provides that Lee was living with his mother. When the document was created, Lee was living in prison. Moreover, the plan very clearly was not to parole Lee to live with his mother under minimal supervision; it was to parole Lee to a RSOP and require global positioning system (GPS) tracking. Thus, in addition to there being evidence that Lee had been rehabilitated in prison, there also was evidence that any further rehabilitation required would be completed before Lee was released into society. It was not an abuse of discretion for the Board to believe in Lee's rehabilitation instead of relying on the egregiousness of his past behavior. *Id*. The trial court's decision to the contrary amounted to a substitution of its judgment for the Board's well-reasoned decision. *Spears*, 325 Mich App at 60.

Lastly, despite the argument of the Monroe County Prosecutor to the contrary, Lee's history of major misconducts committed while in prison supported the Board's determination that Lee had been rehabilitated and would not be a menace to society if paroled. Although he had 18 total major misconducts on his record, since returning to prison in 2006, Lee had only been ticketed for four major misconducts, none of which involved violence or sex. At the time the Board granted Lee's parole, he had been ticket-free for more than four years. Indeed, he had accrued only one major-misconduct ticket—being out of place—in nearly nine years. The Board also noted that Lee was not considered a management problem on his unit, as reflected in the parole eligibility report (PER) prepared in February 2018. The allegation by the Monroe County Prosecutor that Lee had a major misconduct on his record for lying to a prison employee is simply untrue. While he was charged with the misconduct, he was acquitted of that charge after a hearing. Once again, the Board was well-supported by the evidence on the record to determine that Lee's misconduct had drastically reduced in the years preceding parole, which supported the fact that he had been rehabilitated. See *Elias*, 294 Mich App at 524, 543-544 (reversing the trial court's determination that the Board abused its discretion in granting the prisoner's parole where the potential parolee had 35 major misconducts on her record, but none in the five years preceding the parole decision).

In sum, for all the reasons discussed, the Board's decision that it had reasonable assurances that Lee would not be a menace to society or the public health and that there was not a substantial and compelling reason to deny parole was not an abuse of discretion. In reversing the Board's decision, "[r]ather than affording any meaningful deference to the Board, the circuit court substituted its determination that substantial and compelling reasons mandated denial" of Lee's parole. *Id*. at 543-544. Because that was improper, we "reverse the decision of the circuit court and reinstate the order of the [] Board granting" Lee parole. *Id*. at 548.

Reversed.

/s/ David H. Sawyer
/s/ Kathleen Jansen