*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Parole of MICHAEL THOMAS PLUNKETT.

MONROE COUNTY PROSECUTOR,

      Appellee,

v

MICHAEL THOMAS PLUNKETT,

      Appellant,

and

PAROLE BOARD,

      Intervenor.

UNPUBLISHED
January 30, 2020

No. 346216
Monroe Circuit Court
LC No. 18-140782-AP

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Appellant, Michael Thomas Plunkett (Plunkett), appeals by leave granted[1] the circuit court order reversing a decision by the Michigan Parole Board (the Board) granting Plunkett parole. For the reasons set forth in this opinion, we reverse and remand.

---

[1] Plunkett's application for leave to appeal was originally denied by this Court, *In re Parole of Plunkett*, unpublished order of the Court of Appeals, entered December 21, 2018 (Docket No. 346216), but he applied for leave to appeal to the Michigan Supreme Court, which remanded to this Court "for consideration as on leave granted," *In re Parole of Plunkett*, 928 NW2d 209 (Mich, 2018). The Supreme Court's remand was based on a similar issue presented in *In re Parole of Layman*, unpublished per curiam opinion of the Court of Appeals, issued September

-1-

# I. BACKGROUND

In 1994, Plunkett was convicted of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (sexual penetration committed by an individual 17 or older against an individual less than 13), and aggravated assault, MCL 750.81a. Plunkett sexually abused his biological five-year-old daughter (the victim) on multiple occasions. In October 1993, Plunkett sexually penetrated the victim and choked her. After the sexual assault, Plunkett placed the victim in the bath, bathed her, and then held her underwater for several seconds. Plunkett was sentenced to 25 to 60 years' imprisonment for his CSC-I conviction and one-year imprisonment for his aggravated assault conviction.

Plunkett also had three juvenile convictions. In 1981, Plunkett was convicted of public indecency, MCL 750.335a, and forgery, MCL 750.248. In 1983, Plunkett was convicted of breaking and entering, MCL 750.115. It also appears that Plunkett had two prior misdemeanor convictions in Florida, one for prowling, and one for indecent exposure in 1985.

Plunkett became eligible for parole in 2014, but was denied parole. In 2015, the Board granted Plunkett parole, but, after the circuit reversed the Board's decision, the Board determined that parole was unwarranted. Plunkett was denied parole again in 2016. After the Board granted Plunkett parole in 2018, the Monroe County Prosecutor (the prosecutor) appealed the Board's decision, and the circuit court reversed, holding that the Board abused its discretion when it granted Plunkett parole. Plunkett's application for leave to appeal the circuit court's decision to this Court, was denied. *In re Parole of Plunkett*, unpublished order of the Court of Appeals, entered December 21, 2018 (Docket No. 346216). Plunkett then applied for leave to appeal to the Michigan Supreme Court, which remanded the matter to this Court "for consideration as on leave granted." *In re Parole of Plunkett*, 928 NW2d 209 (Mich, 2019).

# II. PAROLE BOARD DECISION

## A. STANDARD OF REVIEW

" 'Judicial review of the Board's decision to grant parole is limited to an abuse-of-discretion standard.' " *In re Parole of Spears*, 325 Mich App 54, 59; 922 NW2d 688 (2018), quoting *In re Parole of Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). Pursuant to MCR 7.118(H)(3), the Prosecutor, as the challenging party, must "show either that the Board's decision was 'a clear abuse of discretion' or 'was in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation.' " *In re Parole of Elias*, 294 Mich App at 538.[2] "An abuse of discretion occurs when the circuit court's decision falls outside the range of reasonable and principled outcomes." *Id*. The reviewing court is prohibited from

---

20, 2019 (Docket No. 341112). *In re Parole of Layman* is not binding on this Court. MCR 7.215(C)(1).

[2] *In re Parole of Elias* quoted MCR 7.104(D)(5) as the relevant court rule. MCR 7.104(D)(5) has since been renumbered, and the content is now found in MCR 7.118(H)(3). *In re Parole of Spears*, 325 Mich App at 59.

substituting its judgment for that of the Board. *Id*. at 538-539, citing *Morales v Parole Bd*, 260 Mich App 29, 48; 676 NW2d 221 (2003). This Court reviews de novo the proper interpretation and application of the Michigan Constitution, statutes, court rules, and administrative guidelines. *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018).

## B. ANALYSIS

"Although matters of parole lie solely within the broad discretion of the [Board], . . . that discretion is clearly restricted by legislative limitations." *In re Parole of Haeger*, 294 Mich App 549, 556; 813 NW2d 313 (2011) (citations and quotation marks omitted). The Legislature mandates the Board's use of the parole guidelines, which were developed by the MDOC and consistent with MCL 791.233e. The parole guidelines "form the backbone of the parole-decision process," and are designed to account for all relevant facts and circumstances that should be considered in a parole decision. *In re Parole of Elias*, 294 Mich App at 512. After a potential parolee is evaluated under the guidelines and scored with respect to each guidelines category, the scores are "aggregated to determine a total guidelines score." *In re Parole of Johnson*, 219 Mich App 595, 599; 556 NW2d 899 (1996). The total parole guidelines score is used to determine a prisoner's probability of parole by placing the prisoner in a category of high, average, or low. *Id*. A prisoner with a parole guidelines score of 3 points or greater warrants placement in the category of high probability of parole. *In re Parole of Elias*, 294 Mich App at 518.

Plunkett's parole guidelines score was +10 points, placing him in the category of high probability of parole. As a result, the Board's discretion whether to grant or deny parole was limited. MCL 791.233e(6). The Board's discretion to depart from the parole guidelines is governed by MCL 791.233e(6), which states:

> The parole board may depart from the guidelines by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.

Accordingly, the Board must grant parole to a prisoner who is given a high probability of parole on the basis of his or her parole guidelines score, "absent substantial and compelling reasons to depart from that decision." *In re Parole of Elias*, 294 Mich App at 539. A "substantial and compelling reason" is " 'an objective and verifiable reason that keenly or irresistibly grabs our attention; is of considerable worth in deciding the length of a sentence; and exists only in exceptional cases.' "[3] *Id*. at 542, quoting *People v Babcock*, 469 Mich 247, 258; 666 NW2d 231

---

[3] The Legislature amended MCL 791.233e on December 12, 2018, to add subsection (7). 2018 PA 339. MCL 791.233e(7) sets forth the specific circumstances that constitute a "substantial and compelling objective" reason to depart from the parole guidelines when a prisoner has a high probability of parole. MCL 791.233e(7) was not in effect when the circuit court reversed the Board's decision granting parole, and therefore, is inapplicable to this case.

(2003). In circumstances such as this, the circuit court should not disturb the Board's decision unless it finds that the Board abused its discretion because substantial and compelling reasons to depart from the guidelines existed.

Plunkett first argues that the circuit court erred when it concluded that the Board abused its discretion when it conditioned parole on Plunkett's continued sex-offender therapy. He supported his argument with citation to an unpublished and, therefore non-binding opinion in this Court.[4] However, unpublished opinions of this Court do not have precedential effect. MCR 7.215(C)(1). In any event, the circuit court's analysis was entirely independent of Plunkett's continued sex-offender therapy. The circuit court's entire analysis focused on the Board's failure to consider the fact that several of the MDOC's assessments expressed concern that Plunkett would reoffend.

More convincingly, Plunkett argues that the circuit court abused its discretion when it concluded that the Board failed to consider all of the relevant facts and circumstances when deciding to grant parole. The circuit court concluded that the Board abused its discretion by failing to consider the fact that there were concerns with over half of the dynamic risk factors contemplated by Plunkett's Qualified Mental Health Professional (QMHP) evaluation. We acknowledge that there were such concerns however, the circuit court's assertion that the Board ignored those concerns is belied by the record. After Plunkett's parole interview, a case summary report was developed for the Board's review. The case summary report acknowledged Plunkett's combined STATIC-99R and STABLE-2007[5] scores and mentioned that there were dynamic risk factors with some concerns, specifically sex as a coping mechanism and deviant sexual behavior. The case summary report recognized that Plunkett accepted responsibility for his actions and expressed remorse for the harm he caused the victim. Plunkett's acknowledgment that his alcohol abuse was the primary catalyst for his aggression and deviant action was noted, as well as his completion of a substance-abuse program and sex-offender-therapy program. Plunket's 2017 Correctional Offender Management Profiling for Alternative Sanctions (COMPAS)[6] scores were listed as mostly good in the therapy termination report. Plunkett also received a low score for recommended supervision on his COMPAS report. Further, Plunkett received positive scores in the areas of reentry social isolation,

_____

[4] Defendant cited *In re Parole of Layman*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 341112), p 2.

[5] The STATIC-99R is an assessment tool designed to support the prediction of sexual offending recidivism in Adult Sex Offenders. The STABLE 2007 assesses change in intermediate-term risk status, assessment needs, and help predict recidivism in sexual offenders by estimating 'stable dynamic risk based upon the number of stable dynamic risk factors present in any one individual.

[6] The COMPAS program "is a comprehensive risk and needs assessment system, which takes into account both static information (such as the prisoner's past criminal offenses) and dynamic data (such as the prisoner's evolving attitudes and mental condition)," and "generates a score ranking the offender's statistical likelihood of violence, recidivism, success on parole, and other factors." *In re Parole of Elias*, 294 Mich App at 520-521(citations omitted).

vocation/education, depression/mental health, and reentry substance abuse, and negative scores in the areas of reentry cognitive behavioral (conviction), family criminality, reentry social environment, and reentry residential instability. Thus, the case summary report recommended that Plunkett be released to a residential sex-offender program (RSOP) if granted parole.

After consideration of multiple evaluations and reports, the Board found that Plunkett fell within the moderate-high or high risk category on all three recidivism assessments. While there were also "some concerns" with over half of the dynamic risk factors on Plunkett's QMHP evaluation, all of these concerns were contained in Plunkett's file, and it was error for the circuit court to assume that the Board ignored evidence contained in the record. *In re Parole of Elias*, 294 Mich App at 547. The circuit court did not highlight any objective information not contained in the Board's file and report. It did accept, inferentially, the prosecutor's argument that the very heinous nature of the underlying offense and its irrevocable injury to victim mediated against release.

The circuit court clearly disagreed with the Board's evaluation of the factors and seemingly applied a "preponderance-of-the-evidence" standard to evaluate the Board's interpretation of Plunkett's QMHP evaluation. While discussing Plunkett's QMHP evaluation, the circuit court stated that "there needs to be reasonable assurances that there is in fact a preponderance, not a probability or a likelihood, that's what that is all about." The circuit court focused on the fact that there were some concerns with over half of the dynamic risk factors, stating, "[t]hat doesn't even get you to a preponderance tipping of the scales or anything here." There is no case law or statutory support that there is a limit to the number of dynamic risk factors with some concerns before parole is unwarranted. Although the circuit court ultimately applied an abuse-of-discretion standard to evaluate the Board's decision granting parole, the circuit court's analysis is one more example of how it substituted its judgment for that of the Board.

### III. CONCLUSION

The Board considered Plunkett's criminal history, the details of his offenses, his substance abuse and sex-offender therapy, and all of his evaluations and assessments before concluding that substantial and compelling reasons to deny Plunkett parole did not exist. After weighing the entire parole file, the Board determined that Plunkett's STATIC-99R and STABLE-2007 scores did not constitute substantial and compelling reasons to depart from the guidelines and that there was reasonable assurance that Plunkett will not be a menace to society. Accordingly, the circuit court erred by substituting its judgment for that of the Board, which has broad discretion over matters of parole, and concluding that there were substantial and compelling reasons to depart from the guidelines and to deny Plunkett parole.

Reversed and remanded for reinstatement of the order granting parole. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh

/s/ Cynthia Diane Stephens