Borrello, P.J.
*56 Intervenor-appellant, the Michigan Parole Board (the Board), appeals by leave granted[1] the circuit court's order reversing the Board's grant of *57 parole to defendant, Ronald Neil Spears. The circuit court's order was entered after appellee, the Monroe County prosecutor (the prosecutor), appealed by leave granted the Board's grant of parole to defendant in the circuit court. For the reasons set forth in this opinion, we reverse and remand the matter to the trial court for entry of an order reinstating parole.
I. BACKGROUND
This appeal arises from defendant's 2006 plea of nolo contendere to one count of malicious destruction of a building between $1,000 and $20,000, MCL 750.380(3)(a). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 92 to 450 months' imprisonment for his conviction. The Board initially granted defendant parole in 2014; however, the Board rescinded its grant of parole after the prosecutor sought leave to appeal the Board's decision in the circuit court. The Board granted defendant parole again in early 2016; however, following an appeal by the prosecutor, the circuit court ruled that the Board violated its duty to consider all relevant facts before granting defendant parole because the Board failed "to prepare a current and meaningful transition accountability plan," otherwise known as a "TAP," and therefore, the circuit court reversed the Board's grant of parole.
In 2017, the Board again granted parole to defendant, and again, the prosecutor sought leave to appeal the Board's grant of parole. The circuit court granted the prosecutor's application for leave to appeal and ultimately entered an order reversing the Board's grant of parole to defendant. In its order, the circuit court took issue with defendant's "2014 TAP" because it was "almost identical" to defendant's "2013 TAP,"
*58 which the circuit court had previously held was "neither current nor robust" when the circuit court reversed the Board's 2016 grant of parole to defendant. The circuit court went on to explain that in its 2016 order, it reversed the Board's grant of parole to defendant because the Board had "violated Michigan Administrative Code, Rule 791.7715(1)(2) [sic], [by] failing to consider a proper TAP ...." Therefore, the circuit court ruled that "[t]he matter before [it] [was] for all intents and purposes identical to that which was ruled upon by [the circuit court]" in 2016, and that the Board had "failed to consider a current and meaningful TAP despite the requirements of In re Heger [2] [sic] and public acts [sic] 245 of 208 [sic]." The Board then sought leave to appeal in *691 this Court, which, as previously indicated, was granted.
II. ANALYSIS
On appeal, the Board argues that the circuit court erred when it made de novo findings of fact, specifically, that defendant's 2014 TAP was "insufficient" without specifying any particularized defects in that document. Further, the Board contends that defendant's 2014 TAP identifies needs and goals that were taken from "the COMPAS instrument," otherwise known as a Corrections Offender Management Program for Alternative Sanctions report, and that defendant's program recommendations and completed programs are tasks that are detailed on defendant's CSX-175 form, a form that is also designated as "the 'Program Classification Report (TAP).' " Moreover, the Board contends that the circuit court failed to articulate a standard by which a TAP could be determined to be "meaningful." And, the Board further argues, despite *59 the circuit court's characterization that the 2014 TAP was not current, the 2014 TAP was updated with the relevant "programming information." Therefore, the Board concludes, the circuit court erred when it held that the Board had violated Mich. Admin. Code, R 791.7715(2)(c)(iii).
The prosecutor contends that the circuit court acted properly when it reversed the Board's grant of parole because, among other reasons, the Board violated its duty to consider all relevant facts and circumstances when it failed to "consider a current and meaningful" TAP. The prosecutor also argues that a CSX-175 form is not a TAP and that even if this Court were to consider it as such, then that form is not a current, meaningful, or robust TAP that meets the requirements as set forth by this Court in In re Parole of Elias , 294 Mich. App. 507, 538, 811 N.W.2d 541 (2011).
"Judicial review of the Board's decision to grant parole is limited to the abuse-of-discretion standard." Id. "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." Id.
"Either the prosecutor or the victim of an offense may appeal in the circuit court when the Board grants a prisoner parole." Id. , citing MCL 791.234(11) and Morales v. Parole Bd. , 260 Mich. App. 29, 35, 676 N.W.2d 221 (2003). The prosecutor, as the challenging party, "has the burden to show either that the Board's decision was 'a clear abuse of discretion' or was 'in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation.' " Elias , 294 Mich. App. at 538, 811 N.W.2d 541, quoting MCR 7.104(D)(5).[3] Additionally, *60 "a reviewing court may not substitute its judgment for that of the Board." Elias , 294 Mich. App. at 538-539, 811 N.W.2d 541.
Generally, " 'matters of parole lie solely within the broad discretion of the [Board] ....' " Elias , 294 Mich. App. at 521, 811 N.W.2d 541, quoting Jones v. Dep't of Corrections , 468 Mich. 646, 652, 664 N.W.2d 717 (2003) (alteration in original). The Board should consider a prisoner's sentencing offense when determining whether to grant parole to a prisoner, but "the Board must also look to the prisoner's rehabilitation and evolution throughout his or her incarceration." Elias , 294 Mich. App. at 544, 811 N.W.2d 541. However, "the Legislature has clearly imposed certain *692 statutory restrictions on the Board's exercise of its discretion." Id. at 521-522, 811 N.W.2d 541. "Statutorily mandated parole guidelines form the backbone of the parole-decision process." Id . at 512, 811 N.W.2d 541.
Caselaw derived from statutory authority holds that the Board may not "grant parole unless it 'has satisfactory evidence that arrangements have been made for ... employment ..., for the prisoner's education, or for the prisoner's care if the prisoner is mentally or physically ill or incapacitated.' " Id. at 522, quoting MCL 791.233(1)(e). Further, " '[a] prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety.' " Elias , 294 Mich. App. at 522, 811 N.W.2d 541, quoting MCL 791.233(1)(a) (alteration in original).
"The [Michigan Department of Corrections (DOC) ] regulations further direct the Board to consider 'all relevant facts and circumstances, including the prisoner's probability of parole as determined by the parole *61 guidelines ....' " In re Parole of Haeger , 294 Mich. App. 549, 554, 813 N.W.2d 313 (2011), quoting Mich. Admin. Code, R 791.7715(1). " Mich. Admin. Code, R 791.7715(2)(c)(iii) provides that the Board may consider a prisoner's 'readiness for release' as evinced by his or her '[d]evelopment of a suitable and realistic parole plan.' " Haeger , 294 Mich. App. at 576, 813 N.W.2d 313, quoting Mich. Admin. Code, R 791.7715(2)(c)(iii) (alteration in original).
At the time this Court decided Haeger we noted that "the DOC recently implemented the Michigan Prisoner ReEntry Initiative (MPRI), which [was] designed to promote public safety and reduce the likelihood of parolee recidivism" and to improve "decision making at critical decision points," including "when the Board is considering whether to release a prisoner from incarceration on parole." Haeger , 294 Mich. App. at 555, 813 N.W.2d 313, quoting Elias , 294 Mich. App. at 519, 811 N.W.2d 541, and DOC Policy Directive 03.02.100, ¶ C, p. 1 (quotation marks omitted). Thus:
Under the MPRI, the DOC and the Board are now required to prepare and consider additional reports, in particular the transition accountability plan TAP [sic]. The TAP "succinctly describe[s] ... exactly what is expected for offender success." The MPRI Model: Policy Statements and Recommendations, Michigan Prisoner ReEntry Initiative, January 2006, p. 5. A DOC staff member "must formulate a TAP with each prisoner, mostly to assist the prisoner's reentry into society, but also to assist the Board in rendering its parole decision." Elias , 294 Mich. App. at 519-520, 811 N.W.2d 541. The TAP analyzes the prisoner's risk factors, sets goals to decrease those risks, and establishes a plan for the prisoner to reach his or her goals. Id . [ Haeger , 294 Mich. App. at 555, 813 N.W.2d 313 (citation omitted; third alteration in original).]
This Court explained in Haeger that the DOC had "used TAPs to assist prisoners in reaching this goal"
*62 since 2005 and that "the development of TAPs is 'the lynchpin' of the MPRI model." Id. at 576-577, 813 N.W.2d 313. Moreover, this Court explained:
In the 2008 appropriations act for the DOC, 2008 PA 245, § 403(8), the Legislature made the DOC's 2009 appropriation contingent on the imposition of a TAP requirement, stating that the DOC "shall ensure that each prisoner develops a [TAP] at intake in order to successfully reenter the community after *693 release from prison. Each prisoner's [TAP] shall be reviewed at least once each year to assure adequate progress." [ Id . at 577, 813 N.W.2d 313 (alterations in original).]
In Elias , this Court observed that a TAP has four elements:
• Needs are criminogenic factors that contribute to risk and are individually assessed using the COMPAS risk assessment instrument.
• Goals are designed to mitigate each criminogenic need.
• Tasks are developed with each offender to meet the goals defined in the plan.
• Activities are created with each offender to break each task down into manageable steps. [ Elias , 294 Mich. App. at 520, 811 N.W.2d 541 (citation omitted).]
As of May 2016, the DOC has transitioned from the MPRI model to "The Michigan Offender Success Model," which requires a "Case Plan" for each prisoner and a TAP that "integrates the prisoner's transition from prison to the community by developing phases in the transition process."[4] According to defendant's DOC records, a "Manager Version" overview of defendant's 2013 to 2014 "TAP/Case Plan" identified defendant's *63 "Risk Inventory," "Client Strengths," "Client Interests," "Client Needs Summary," and "TAP/Case Plan Goals, Tasks and Activities." Specifically, under defendant's "TAP/Case Plan Goals," defendant was assigned various goals related to his "Client Needs," including maintaining sobriety, developing prosocial relationship activities within his community, and seeking mental health counseling. A second record, listed on a form titled "Program Classification Report" with the designation of CSX-175, showed a "TAP Update" pertaining to defendant starting a "WorkKeys Career" program on October 11, 2016, and under another "TAP Update" that defendant had completed a program called "VPP Moderate" between July 2015 and October 2015.
Review of the record in this case reveals that before the Board voted on whether defendant should be granted parole, defendant underwent an evaluation conducted by a "Qualified Mental Health Professional," and the evaluation indicated that defendant did not "express homicidal ideation." Similarly, the DOC prepared plans regarding defendant's potential parole release that included identifying a specific residence for defendant and how defendant's mental health needs would be addressed. Ultimately, the Board granted defendant parole in 2017. However, the circuit court reversed the Board's grant of parole to defendant because, among other reasons, the Board had "failed to consider a current and meaningful TAP despite the requirements of [ Haeger ] and [2008 PA 245]." In its opinion, the circuit court failed to explain what exactly constituted a "meaningful" TAP, focusing instead on how defendant's 2014 TAP was "almost identical" to a 2013 TAP that had been prepared for defendant and that the circuit court had previously held to be "neither current nor robust." Hence, by classifying the TAP as "neither current nor robust," the circuit court seemingly *64 created its own standards not set forth in statute or adopted by this Court in Haeger . By contrast, in Haeger , this Court explained that once the Board had rendered a decision regarding a defendant's parole, the Board "must issue in writing a sufficient explanation *694 for its decision to allow meaningful appellate review and to inform the prisoner of specific recommendations for corrective action if necessary to facilitate release." Haeger , 294 Mich. App. at 556, 813 N.W.2d 313 (quotation marks and citations omitted; emphasis added). Accordingly, in Haeger , this Court held that the Board's grant of parole to the defendant was "in violation of controlling administrative rules and agency regulations" because the defendant's file lacked "case summary reports produced following Board interviews, any reports produced following in-reach services, or any TAP that may have been developed with [the defendant]," and "the Board or the DOC, or both, failed to maintain careful records documenting [the defendant's] participation in services and completion of steps necessary for parole." Haeger , 294 Mich. App. at 578, 581, 813 N.W.2d 313. Therefore, this Court did not provide objective criteria for what constituted a "meaningful" TAP in Haeger ; rather, it concluded that the Board abused its discretion when it granted parole to a defendant in the absence of a TAP and other important records that the Board was required to consider before granting or denying that defendant parole. See id. at 581, 813 N.W.2d 313.
Hence, pursuant to our decision in Haeger , review of the Board's decision should not focus on whether the TAP is current or robust; rather, review should begin by determining whether the Board reviewed a TAP that was prepared for this defendant. In this case, the record clearly reveals that the Board demonstrated that a TAP was prepared for this defendant. Hence, we cannot find a basis for the circuit court to have concluded *65 that the Board had failed to consider defendant's readiness for release based on defendant's "suitable and realistic parole plan." Haeger , 294 Mich. App. at 576, 813 N.W.2d 313, quoting Mich. Admin. Code, R. 791.7715(2)(c)(iii). While we note that the circuit court observed the similarity between defendant's 2013 TAP and 2014 TAP, the circuit court merely declared that those documents were insufficient without providing any further explanation. Further, the circuit court seemingly ignored defendant's Program Classification Report, concluding without explanation that defendant's TAP could only be encompassed on a single form or document. That form specifically recorded multiple fields with the designation of "TAP Update," with the most recent update showing that defendant began a "WorkKeys Career" program as recently as October 2016. Thus, even if we were to conclude that defendant's document entitled "2014 TAP" was somehow deficient because it only provided defendant's "Needs" and "Goals," we cannot ignore that the Board provided ample documentation of defendant's TAP-related "Tasks" and "Activities" on defendant's Program Classification Report. Hence the circuit court should have considered and addressed defendant's Program Classification Report before reaching its conclusions. Failure to do so was tantamount to ignoring a significant portion of the record.
The circuit court also held that the Board had failed to consider a "current" TAP per the requirements of 2008 PA 245, which was an appropriations act encompassing the fiscal year ending in 2009 for the DOC. 2008 PA 245, § 403(8) provides, in relevant part:
The department shall ensure that each prisoner develops a transition accountability plan at intake in order to successfully reenter the community after release from *66 prison. Each prisoner's transition accountability plan shall be reviewed at least once each year to assure adequate progress.
This Court considered the text of 2008 PA 245, § 403(8) in Haeger in the broader *695 context of a discussion regarding how the DOC had used TAPs since 2005 and how TAPs were central to the MPRI model. Haeger , 294 Mich. App. at 576-577, 813 N.W.2d 313. This Court relied on Mich. Admin. Code, R. 791.7715(2)(c)(iii), with regard to the Board being able to consider a prisoner's development " 'of a suitable and realistic parole plan' " when it evaluated whether that prisoner was ready for parole. Haeger , 294 Mich. App. at 576, 813 N.W.2d 313, quoting Mich. Admin. Code, R. 791.7715(2)(c)(iii). Therefore, in Haeger , this Court merely noted the specific conditions imposed as part of the appropriations act to help underscore the ubiquitous nature of TAPs in order to highlight the importance of the absence of a TAP in the defendant's records. Haeger , 294 Mich. App. at 576-577, 581, 813 N.W.2d 313. Accordingly, it was error for the circuit court to have relied on 2008 PA 245, § 403(8) to reach its conclusion that defendant's TAP was not "current," because, as demonstrated by defendant's Program Classification Report, defendant's TAP was updated as recently as October 2016, which was only seven months before the Board voted to grant defendant parole.
Regardless of whether we would have concluded that defendant's 2014 TAP was deficient, the circuit court erred to the extent it held that this Court has set forth standards relative to a defendant's TAP. The closest this Court has come to articulating any standard relating to a TAP for a potential parolee is that a TAP, among other relevant documents, must be considered by the Board before granting or denying parole. Haeger , 294 Mich. App. at 581, 813 N.W.2d 313. Additionally, unlike the *67 facts before this Court in Haeger , this case does not present us with a situation in which defendant's TAP was absent from the record or in which the Board contended that an essentially blank form constituted defendant's TAP. Rather, the entirety of defendant's TAP was recounted across multiple forms, and the Board specifically directed the circuit court to those relevant records. Therefore, the circuit court erred when it held that the Board had abused its discretion by failing to consider a "meaningful" TAP.
In reaching our conclusions we are mindful of the prosecutor's arguments that defendant's 2014 TAP and Program Classification Report suffer from infirmities due to the absence of signatures on those records from either defendant or his "Case Manager." However, the prosecutor fails to explain a statutory basis or cite caselaw to inform this Court why those irregularities should warrant concern or be afforded any weight when reviewing the Board's decision to grant defendant parole. The prosecutor merely asserts that these defects demonstrate that the Board failed to review defendant's TAP before it granted him parole. Yet that inference is entirely undone by the fact that in defendant's June 1, 2017 Case Summary Report, the Board specifically noted that defendant completed "VPP" with "gains in all treatment targets." As discussed earlier, defendant's Program Classification Report specifically listed defendant's completion of a program called "VPP Moderate" between July 2015 and October 2015.[5] Therefore, the circuit court, by injecting its own *68 criteria into defendant's TAP, effectively substituted its judgment for that of the Board's when it reversed the Board's grant of parole to defendant. *696 Given our resolution of this issue, we need not address the Board's other contentions on appeal. See Agnone v. Home-Owners Ins. Co. , 310 Mich. App. 522, 534 n. 8, 871 N.W.2d 732 (2015) (explaining that given the resolution of the issue and this Court's reversal of the trial court's grant of summary disposition in favor of plaintiff, this Court did not need to address the defendant's remaining claims of error).
Reversed and remanded for reinstatement of the order granting parole. We do not retain jurisdiction.
SAWYER and JANSEN, JJ., concurred with BORRELLO, P.J.

In re Parole of Spears , unpublished order of the Court of Appeals, entered December 21, 2017 (Docket No. 340914).

In re Parole of Haeger , 294 Mich. App. 549, 813 N.W.2d 313 (2011).

The court rule cited in Elias was subsequently renumbered. The content of that court rule may now be found at MCR 7.118(H)(3).

Michigan Department of Corrections, The Michigan Offender Success Model , < < http://www.michigan.gov/documents/corrections/Michigan_Prisoner_Reentry_Model_05.2012._454416_7.pdf>> (accessed March 8, 2018) [https://perma.cc/QVJ3-DWU6].

We note in reaching this conclusion the prosecutor's contention, as previously explained, that the circuit court did not err because defendant's Program Classification Report on the CSX-175 form is not a TAP, and that even if this Court construes that record as a TAP, then it is not a "current, meaningful or robust TAP that meets the requirements of In re Elias ." As the party appealing the Board's grant of parole to defendant, it is the prosecutor's burden to demonstrate how the Board clearly abused its discretion. Elias , 294 Mich. App. at 538, 811 N.W.2d 541. Yet, beyond recounting this Court's observations about the characteristics and elements of a TAP in Elias , the prosecutor has failed to elaborate what would constitute a "meaningful" or "robust" TAP. Moreover, the prosecutor has also, without explanation, arrived at the conclusion that a TAP must consist of an all-encompassing individual document. Hence, the prosecutor's arguments fail for the same reasons as stated earlier.