*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Parole of RONALD IRWIN.

---

MACOMB COUNTY PROSECUTOR,

      Appellee,

v

RONALD IRWIN,

      Appellant,

and

PAROLE BOARD,

      Intervenor.

UNPUBLISHED
January 30, 2020

No. 342963
Macomb Circuit Court
LC No. 2017-000053-AP

---

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Ronald Irwin (Irwin), appeals as on leave granted[1] the circuit court's opinion and order reversing a decision by the Michigan Parole Board (the Board) to grant Irwin parole. We reverse and remand.

---

[1] Irwin's delayed application for leave to appeal was originally denied by this Court, *In re Parole of Irwin*, unpublished order of the Court of Appeals, entered June 7, 2018 (Docket No. 342963), but he applied for leave to appeal to the Michigan Supreme Court, which remanded to this Court "for consideration as on leave granted." *In re Parole of Irwin*, 928 NW2d 208 (Mich, 2019). The Supreme Court's remand was based on a similar issue presented in *In re Parole of Layman*,

# I. FACTUAL BACKGROUND

In 2012, Irwin pleaded no contest to second-degree criminal sexual conduct (CSC-II), MCL 750.520c (sexual contact committed by an individual 17 or older against an individual less than 13), and pleaded guilty to failure to register as a sex offender, MCL 28.729. Irwin sexually assaulted his 15-year-old stepdaughter (the victim). Irwin placed his hands under the victim's underwear and on the top of her vagina while she slept on the couch. He claimed it was accidental. However, when he later presented her with illustrations on how to masturbate and asked the victim to masturbate in front of him, she reported both incidents.

Irwin was also charged and convicted in 2012 for failing to register as a sex offender. At the time of the 2012 offense, Irwin had two prior CSC convictions. In 1992, Irwin pleaded guilty to third-degree criminal sexual conduct CSC-III, MCL 750.520d (sexual penetration with another person that is at least 13 years of age and under 16 years of age). In 1993, Irwin pleaded guilty to fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e (sexual contact with another person that is at least 13 years of age but less than 16 years of age and actor is at least five years older). Irwin's convictions stem from a sexual relationship that he maintained with a 14-year-old neighbor when he was 22 years old. Irwin served 12 years in prison for his convictions and was required to register as a sex offender.

Irwin became eligible for parole in 2015, but was denied parole on two occasions. In July 2017, the Board granted Irwin parole, but the prosecutor appealed the decision. The prosecutor argued that the Board abused its discretion by granting Irwin parole because it lacked reasonable assurance that Irwin would not pose a threat to society or risk to the public safety. The prosecutor relied on Irwin's poor sex-offender therapy progress, the Board's condition to parole that Irwin complete a residential sex-offender program (RSOP), and a 2013 sexual misconduct ticket to argue that the Board lacked reasonable assurance. The circuit court agreed, holding that the Board's grant of parole was a clear abuse of discretion in light of Irwin's record of similar sexual offenses, failure to respond to past sex-offender therapy, continuing attraction to minor females, and conviction for failing to register as a sex offender. The circuit court reasoned that the Board's decision to condition parole on Irwin's completion of a RSOP demonstrated that the Board lacked reasonable assurance that Irwin would not pose a risk to public safety.

# II. PAROLE DECISION

Irwin argues that the circuit court erred in reversing the Board's decision to grant him parole in light of the supporting record and his parole guidelines score of zero points. We agree.

" 'Judicial review of the Board's decision to grant parole is limited to the abuse-of-discretion standard.' " *In re Parole of Spears*, 325 Mich App 54, 59; 922 NW2d 688 (2018), quoting *In re Parole of Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). Pursuant to MCR

---

unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 341112). *In re Parole of Layman* is not binding on this Court. MCR 7.215(C)(1).

7.118(H)(3), the prosecutor, as the challenging party, must "show either that the Board's decision was 'a clear abuse of discretion' or 'was in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation.' " *In re Parole of Elias*, 294 Mich App at 538.[2] "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id.* "A trial court necessarily abuses its discretion when it makes an error of law." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). The reviewing court is prohibited from substituting its judgment for that of the Board. *In re Parole of Elias*, 294 Mich App at 538-539, citing *Morales v Parole Bd*, 260 Mich App 29, 48; 676 NW2d 221 (2003). This Court reviews de novo the proper interpretation and application of the Michigan Constitution, statutes, court rules, and administrative guidelines. *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018).

Generally, the Board has broad and exclusive discretion over matters of parole. *In re Parole of Haeger*, 294 Mich App 549, 556; 813 NW2d 313 (2011). However, there are clear legislative limitations on that discretion. *Id.* Under MCL 791.233(1)(a), "[a] prisoner must not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." A restriction on the Board's broad discretion is the "[s]tatutorily mandated parole guidelines," which "form the backbone of the parole-decision process," and are designed to account for all relevant facts and circumstances that should be considered in a parole decision. *In re Parole of Elias*, 294 Mich App at 512. "Under the parole guidelines, a prisoner is assigned positive or negative points for variables in eight categories[, which] . . . are aggregated to reach a 'Final Parole Guidelines Score' that determines whether a prisoner's probability of parole is high, average, or low." *In re Parole of Haeger*, 294 Mich App at 560. A prisoner with a parole guidelines score of three points or greater warrants placement in the category of high probability of parole. *In re Parole of Elias*, 294 Mich App at 518.

In pertinent part, MCL 791.233e provides that, "[i]n developing the parole guidelines, the department shall consider factors including, but not limited to, the following:"

(a) The offense for which the prisoner is incarcerated at the time of parole consideration.

(b) The prisoner's institutional program performance.

(c) The prisoner's institutional conduct.

(d) The prisoner's prior criminal record. As used in this subdivision, "prior criminal record" means the recorded criminal history of a prisoner, including all misdemeanor and felony convictions, probation violations, juvenile adjudications

---

[2] *In re Parole of Elias* quoted MCR 7.104(D)(5) as the relevant court rule. MCR 7.104(D)(5) has since been renumbered, and the content is now found in MCR 7.118(H)(3). *In re Parole of Spears*, 325 Mich App at 59.

for acts that would have been crimes if committed by an adult, parole failures, and delayed sentences.

(e) Other relevant factors as determined by the department, if not otherwise prohibited by law. [MCL 791.233e(2)-(3)].

Irwin's parole guidelines score was zero which gave him an "average" probability of parole. "[T]he guidelines allow for a broader exercise of discretion in the case of a prisoner with an average probability of parole." *Killebrew v Department of Corrections*, 237 Mich App 650, 656; 604 NW2d 696 (1999). In order to grant parole to a prisoner with an average probability of parole, the Board need only state legitimate reasons that are neither compelling nor substantial. *Id*. at 655-656.

The Board's decision to grant Irwin parole was supported by its review of Irwin's conduct while incarcerated, his participation in and benefit from programs and therapy, and scores on tests that were designed to assess his risk to reoffend. The Board noted that Irwin had served his sentence for failing to register and accepted responsibility for the CSC against his step-daughter. It considered that Irwin completed sex offender therapy, prisoner observation aid training, and a substance abuse program while incarcerated. The Board reviewed Irwin's satisfactory conduct reports. It noted that Irwin adequately performed his job details. The Board cited Irwin's Offender Management Profiling for Alternative Sanctions (COMPAS) score of a low moderate risk for re-offending. Irwin's scores for reentry substance abuse and reentry cognitive behavior (conviction) were unlikely, which were considered positive scores. His scores for educational, reentry social environment, depression/mental health, and reentry social isolation were highly probable, which are considered negative scores. Irwin's score for reentry residential instability was probable, which are considered neutral scores.

The circuit court opinion cited the Board's decision to grant Irwin parole on the condition that he continue sex-offender therapy upon his release as a basis for finding that the Board abused its discretion in granting parole. The circuit court stated the following:

> Given that a prison's program performance is a *mandatory* factor to consider under MCL 791.233e(2)(b) *before* granting parole, the Board in the present case violated the statute when it granted [Irwin] parole *despite* his poor performance in the 2013 sex[-]offender program ("SOP"). More fully stated, the Board abused its discretion when it required that [Irwin] receive sex[-]offender therapy after being paroled with the understanding that he did not make satisfactory progress in that therapy before release. By doing so, the Board lacked reasonable assurance that [Irwin] would not become a menace to society or risk public safety.

There is no published case addressing whether the requirement for post-release sex offender therapy in and of itself renders a parole decision to be the result of an abuse of discretion. Here, the circuit court relied on the holding in *In re Parole Cehaich*, unpublished opinion of the Court of Appeals issued October 1, 2013 (Docket No. 312386), that "the parole board abused its discretion when it required defendant to receive sex offender therapy *after* being paroled" because the condition "does not comply with the statutory requirement that a prisoner shall not

be given liberty until there are reasonable assurances he will not become a menace to society or to the public safety." *Id*. at 4. In Cehaich's case, he was to receive sex offender therapy sometime *during* his release where he had received no sex offender treatment while incarcerated. There was also no "indication in the record of how and when sex offender therapy would be completed." *Id*. at 4, 5.

We adopt the logic of *In re Parole of Layman*, another unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 341112). Layman's grant of parole was conditioned on his participation in a residential sex offender treatment program. Like in *In re Cehaich*, the circuit court "held that requiring Layman to participate in sex offender treatment after being paroled conflicted with the requirement that prisoners shall not be paroled without reasonable assurances that they will not become menaces to society or public safety." *In re Parole of Layman,* unpub op at 2. A panel of this Court disagreed that *Cehaich* was persuasive authority in Layman's case where Layman had completed sex offender treatment while in prison. *Layman* held that "[t]he circuit court substituted its judgment for that of the Board when it found that requiring therapy subsequent to parole necessarily implies that the Board lacks reasonable assurance that a prisoner will not reoffend[.]" *Id*. at 5. We agree that requiring a prisoner to undergo additional treatment as a condition of parole by itself does not constitute a violation of MCL 791.233(1)(a), and find that imposition of sex offender therapy is not unlike any of the other conditions which the Board may impose as a condition of release.

In Irwin's case, the circuit court's decision was founded on an error of law and is therefore an abuse of discretion. Even if the circuit court's opinion was intended to assert that the post-conviction therapy coupled with the underlying record rendered the Board's parole decision an abuse of discretion, we disagree. The Board reviewed Irwin's entire record, which was otherwise unremarkable. The Board considered the record regarding Irwin's in-custody therapy. We note that Irwin completed SOP therapy and received mostly fair ratings in his therapy termination report. Irwin had completed 37 sessions of sex offender therapy while incarcerated and was required to immediately relocate to a RSOP facility upon his release from prison as a condition of his parole. At the time of the Board's decision granting parole, Irwin was already accepted into a placement and he was required to complete that program before he could be released into the public. Irwin's Therapy Termination Report and Psychological Evaluation evaluated Irwin as good or fair in all areas of general group participation and progress toward goals and objectives. Irwin received evaluations of excellent for demonstrating the ability to manage anger and criminal thinking both inside and outside of group sessions. He had a plan in case of relapse. The therapist opined that Irwin's risk to re-offend was accurately measured by the STATIC 99R as low moderate. The therapist's report was modified and Irwin's re-offense risk was changed to moderate because of a sexual misconduct ticket however, the ticket was later reduced to an incident of insolence when no sexual misconduct was found. While the therapist questioned whether Irwin failed to internalize what he learned in therapy in light of the misconduct ticket, the therapist did not modify his other findings including that Irwin's "exploration into his sexual offenses showed growth in his ability to identify cognitive distortions linked to his offending behavior with adequate levels of remorse for his offending behavior and empathy for his victims, primary and secondary."

Irwin's re-offense risk was just one facet in determining his eligibility for parole. The Board otherwise exercised its discretion within the parameters of MCL 791.233e and stated

legitimate reasons as to why it had reasonable assurance that Irwin would not become a menace to society or to the public safety. In light of the record evidence, the Board's decision to grant Irwin parole fell within the range of principled outcomes. We therefore conclude that the circuit court abused its discretion in substituting its judgment for that of the Board.

Reversed and remanded to the circuit court with instructions to reinstate the Board's decision granting Irwin parole. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens