*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

*In re* PAROLE OF RICHARD ALLEN MCBRAYER.

UNPUBLISHED
March 10, 2022

---

MACOMB COUNTY PROSECUTOR,

      Plaintiff-Appellee,

v

No.   357712
Macomb Circuit Court
LC No.   2020-000063-AP

RICHARD ALLEN MCBRAYER,

      Defendant,

and

MICHIGAN PAROLE BOARD,

      Defendant-Appellant.

---

*In re* PAROLE OF RICHARD ALLEN MCBRAYER.

---

MACOMB COUNTY PROSECUTOR,

      Plaintiff-Appellee,

v

No.   357720
Macomb Circuit Court
LC No.   2020-000063-AP

RICHARD ALLEN MCBRAYER,

      Defendant-Appellant,

and

---

-1-

MICHIGAN PAROLE BOARD,

        Defendant.

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

In Docket No. 357712, the Michigan Parole Board (the Board) appeals the circuit court's June 11, 2021 opinion and order reversing the Board's decision to grant parole to Richard Allen McBrayer (McBrayer). In Docket No. 357720, McBrayer appeals the same opinion and order of the circuit court. We affirm in both dockets.

## I. BACKGROUND

This is the third appeal involving the Board's decision to grant McBrayer parole. The relevant facts were outlined in detail in a previous opinion:

> In 1994, McBrayer was charged with five counts of first-degree criminal sexual conduct, MCL 750.520b(1)(b), and he pleaded guilty to two of . . . those counts. McBrayer was sentenced to two concurrent terms of 20 to 40 years' imprisonment. The convictions arose from McBrayer's sexual abuse of his stepdaughter (the victim), allegedly beginning in 1990 and continuing until September 1993. In 2015, the Board voted to grant McBrayer parole, and he was released on parole from January 2016 to April 2018. However, the circuit court reversed the Board's decision to parole McBrayer. This Court affirmed the circuit court's decision. *In re Parole of McBrayer*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2017 (Docket No. 336084) (*McBrayer I*). In April 2018, our Supreme Court denied the Board's application for leave to appeal this Court's decision in *McBrayer I*. *In re Parole of McBrayer*, 501 Mich 1038 (2018) (*McBrayer II*). In light of our Supreme Court's denial of leave to appeal, the Board rescinded McBrayer's parole, and he was returned to custody in April 2018. However, just two months later, on June 18, 2018, the Board again voted to grant McBrayer parole. His release was stayed pending appeal. On November 26, 2018, the circuit court reversed the Board's June 18, 2018 decision to grant parole. The Board then commenced [an] appeal in this Court. [*In re Parole of Richard Allen McBrayer*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2019 (Docket No. 346841), p 2 (*McBrayer III*).]

In August 2019, this Court affirmed the circuit court's decision to reverse the Board's 2018 decision to grant parole, reasoning that there were substantial and compelling reasons to deny parole because there had "been no improvements in the relevant facts and circumstances since the 2015 parole decision. . . ." *Id*. at 3.

In 2020, the Board again considered McBrayer for parole. Based on the parole factors, the Board calculated McBrayer's final parole guidelines score at +11 and granted him parole, with a projected parole date of December 9, 2020. The Macomb County Prosecutor (the prosecutor) appealed to the circuit court, which stayed McBrayer's release from prison. The prosecutor argued that the Board had abused its discretion because there had been insufficient improvement of material facts since *McBrayer III* to warrant parole. In response, McBrayer and the Board argued that McBrayer's excellent prison record and rehabilitation while incarcerated demonstrated that there no longer existed substantial and compelling reasons to deny him parole. The circuit court reversed the Board's decision to grant McBrayer parole. The circuit court held that the Board had abused its discretion because there continued to be a "lack of improvement in the relevant facts and circumstances. . . ." McBrayer and the Board now separately appeal the circuit court's opinion and order.

## II. ANALYSIS

McBrayer and the Board argue that the circuit court improperly reversed the Board's 2020 decision to grant McBrayer parole. We disagree.

"Judicial review of the Board's decision to grant parole is limited to the abuse-of-discretion standard." *In re Parole of Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011).

> [T]he challenging party has the burden to show either that the Board's decision was "a clear abuse of discretion" or was "in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation." An abuse of discretion occurs when the . . . court's decision falls outside the range of reasonable and principled outcomes. Importantly, a reviewing court may not substitute its judgment for that of the Board. [*Id*. at 538-539 (citations and footnote omitted).]

"Ultimately, matters of parole lie solely within the broad discretion of the Board." *Id*. at 549 (quotation marks, citations, and alterations omitted).

> The Board should consider a prisoner's sentencing offense when determining whether to grant parole to a prisoner, but the Board must also look to the prisoner's rehabilitation and evolution throughout his or her incarceration. However, the Legislature has clearly imposed certain statutory restrictions on the Board's exercise of its discretion. Statutorily mandated parole guidelines form the backbone of the parole-decision process. [*In re Parole of Spears*, 325 Mich App 54, 60; 922 NW2d 688 (2018) (quotation marks and citations omitted).]

Importantly, "[a] prisoner must not be given liberty on parole until the board has reasonable assurance, *after consideration of all of the facts and circumstances*, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." MCL 791.233(1)(a) (emphasis added).

"The [Michigan Department of Corrections (DOC)] regulations further direct the Board to consider all relevant facts and circumstances, including the prisoner's probability of parole as determined by the parole guidelines . . . ." *In re Parole of Spears*, 325 Mich App at 60-61

-3-

(quotation marks and citations omitted; alterations in original). Some of the relevant factors include "[t]he nature and seriousness of the offenses for which the prisoner is currently serving," Mich Admin Code, R 791.7715(2)(a)(*i*), and the "[d]evelopment of a suitable and realistic parole plan," Rule 791.7715(2)(c)(*iii*). The Board is also required to consider "any crime victim's statement. . . ." Rule 791.7715(1).

After a potential parolee "is evaluated under the guidelines and scored with respect to each guidelines category," the "scores are aggregated to determine a total guidelines score." *In re Parole of Johnson*, 219 Mich App 595, 599; 556 NW2d 899 (1996). That score is then used to determine a prisoner's probability of parole by placing the prisoner in a category of "high, average, or low. . . ." *Id.* "A prisoner with a [parole guidelines] score of +3 points or greater merits placement in the high-probability [of parole] category . . . ." *In re Parole of Elias*, 294 Mich App at 518.

McBrayer's parole guidelines score was +11 points, placing him in the category of high probability of parole. As set forth in the version of MCL 791.233e(6) that applies in this case, the Board has limited discretion to vary from the parole guidelines:

> The parole board may depart from the parole guideline[s] by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing.[1]

Accordingly, the Board must grant parole to a prisoner who scores a high probability of parole on the basis of his or her parole guidelines, "absent substantial and compelling reasons to depart from that decision." *In re Parole of Elias*, 294 Mich App at 539. A "substantial and compelling reason" is "an objective and verifiable reason that keenly or irresistibly grabs our attention; is of considerable worth in deciding the length of a sentence; and exists only in exceptional cases." *Id.* at 542 (quotation marks and citation omitted). Because subjective factors play a role in the parole decision, the substantial and compelling reasons do not need to be objective and verifiable. *Id.* at 542-543. However, if "those substantial and compelling reasons also qualify

---

[1] A statutory amendment effective December 12, 2018, requires any departure from the parole guidelines to be based on "substantial and compelling *objective* reasons stated in writing." MCL 791.233e(6) (emphasis added), as amended by 2018 PA 339. That amendment also identified and limited the circumstances in which substantial and compelling objective reasons for a departure could be found to exist with respect to a prisoner with a high probability of parole. See MCL 791.233e(7), as added by 2018 PA 339. But those amendments do not apply in this case because McBrayer's offenses were committed before December 12, 2018, i.e., the effective date of 2018 PA 339. Specifically, MCL 791.233e(13), as added by 2018 PA 339, provides:

> Subsections (6), (7), and (8) as amended or added by the amendatory act that added this subsection apply only to prisoners whose controlling offense was committed on or after the effective date of the amendatory act that added this subsection.

as objective and verifiable, a reviewing court would be more apt to affirm the Board's decision." *Id.* at 543 (quotation marks and citation omitted).

In this case, substantial and compelling reasons existed to depart from the parole guidelines. Although the nature of the offense is not the most important factor in deciding whether to grant parole, see *In re Parole of Elias*, 294 Mich App at 544, the facts underlying McBrayer's convictions bear repeating. As outlined by this Court in *McBrayer I*:

> [McBrayer's] convictions arose from the sexual abuse of his stepdaughter. The abuse was alleged to have started in 1990 and continued until September 1993; the victim was between 12 and 14 years old at the time. [McBrayer], a former law-enforcement officer and karate instructor, was between 34 and 36 years old. According to the victim, when she turned 12 [McBrayer] started sexually penetrating her vaginally, anally, and orally. She stated that [McBrayer] raped her on a daily basis and that some of these assaults were aggressive and violent anal rapes. The victim suffered long-term physical injuries and medical problems due to the assaults, along with emotional and mental trauma. The physical injuries included blocked bowels and bleeding of the rectum.

> * * *

> [Additionally, during a 2015 interview with a member of the Board,] [t]he victim recounted how McBrayer, a former court officer in a state district court, kept her in constant fear, and she stated that she still suffers horribly, including by having panic attacks. She stated that, to this day, she cannot have a natural bowel movement and instead needs physical assistance. She stated that she is very scared that McBrayer will "come after her daughter" out of anger from the victim's having reported him. The victim recounted an instance when she was in the eighth grade and McBrayer sodomoized [sic] her so severely that she needed hospitalization; McBrayer came to the hospital with the victim's mother and pretended to offer concern and support. We further note that the victim contracted a sexually transmitted disease from McBrayer. [*McBrayer I*, unpub op at 1-2, 4 (footnote omitted).]

Despite the level of abuse and the fact that McBrayer had successfully completed sex offender treatment in 2010 while he was incarcerated, it was noted in 2014 that McBrayer "continued to minimize the level of abuse and that his insight was limited. While there evidently was improvement in these areas by the time of [a] 2015 case summary report, McBrayer admitted . . . that he had fantasized about the victim and that he was attracted to 13- and 14-year-olds." *McBrayer I*, unpub op at 4. In 2016, McBrayer again participated in sex offender treatment. However, in *McBrayer III*, this Court noted as follows:

> According to the May 1, 2018 Qualified Mental Health Professional Evaluation (QMHPE), which was based on an interview of McBrayer held on April 26, 2018, McBrayer continued to deny that he had engaged in anal sex with the victim, despite the longstanding and clear evidence of the violent anal rapes. McBrayer's continued minimizing of his crimes calls into serious question the

conclusion in the April 12, 2018 COMPAS (correctional offender management profiling for alternative sanctions) assessment that McBrayer's "low Cognitive Behavioral/Psychological score indicates a low likelihood of cognitions such as blaming others, making excuses, or minimizing the seriousness of their offense. A cognitive therapy program does not appear to be needed." His minimizing also calls into question the conclusion in the 2018 COMPAS assessment that there was "[n]o [p]otential [f]aking [c]oncern." And his minimizing contradicts the Board's conclusion, in its June 18, 2018 notice of parole decision, that McBrayer had accepted responsibility for his crime and had accepted his criminal history.

* * *

The May 1, 2018 QMHPE stated that "McBrayer admitted to having a sexual attraction to young females, age 12-14, which has persisted since his incarceration in the MDOC." It was then noted that "McBrayer admitted to continued sexual fantasies and masturbation involving this age group, to include the victim, throughout his incarceration." The May 1, 2018 QMHPE also indicated that McBrayer's continued sexual fantasies and masturbation regarding the victim and underage girls was inconsistent with his claim that the sex offender programming that he underwent in 2010 had changed his sexual behavior and thinking. The May 1, 2018 QMHPE concluded that "McBrayer evidenced a clinically significant area of concern in the following need area: Deviant Sexual Preferences." [*McBrayer III*, unpub op at 4-5 (footnote omitted).]

According to a July 16, 2020 QMHPE that was based in part on a July 9, 2020 interview, McBrayer "professes to no longer have a deviant sexual interest in 12 to 14 year old children." However, the evaluator was "skeptical" of McBrayer's statement given that "an individual's sexual interest typically do[es] not change over the course of time." Additionally and importantly, the evaluator noted "some concern" with (1) McBrayer's "Significant Social Influences," which has included other sex offenders in the past, (2) McBrayer's "Hostility Towards Women," and (3) McBrayer's "Sexual Preoccupation and Deviant Sexual Interest."

Despite these serious issues, McBrayer's parole plan was to return to his "PRIOR JOB IN LANDSCAPING BUSINESS," which is located in Oakland County and could result in McBrayer being in residential areas where children are located. Additionally, there is no indication that McBrayer identified a need to continue sex offender treatment. Rather, as noted by the circuit court, McBrayer only expressed an interest in attending Alcoholics Anonymous, which could support that McBrayer is either unable or unwilling to continue to address his issues with child-focused sexual deviance. Despite McBrayer's failure to present a plan to address his identified risks, the 2020 case summary report reflected that McBrayer had a "STRONG PAROLE PLAN." This conclusion was seemingly based solely on the fact that McBrayer expressed remorse for his actions and would be able to resume employment with his previous employer. The Board failed to weigh the fact that McBrayer continued to have "Sexual Preoccupation and Deviant Sexual Interest."

The Board also failed to consider whether McBrayer's placement after he was paroled would put McBrayer in proximity to the victim and would create a risk of continued sexual

deviance. As noted in *McBrayer I*, McBrayer had previously indicated that it was necessary for him to relocate to Louisiana so that he could be "away" from the victim and in an area that was "appropriately removed from high potential for underage traffic." *McBrayer I*, unpub op at 5 (quotation marks omitted). However, this Court in *McBrayer I* emphasized that McBrayer's plan to move to Louisiana had failed[2] and that he was instead placed at a facility in Clinton Township, which was located "relatively near to the victim's home." *McBrayer I*, unpub op at 5. The *McBrayer I* Court concluded that "[t]he various [parole guidelines] scores did not take into account the nuances of McBrayer's severe abuse of the victim coupled with the failure of his professed plan to prevent relapse and 'stay away from his victim.' " *Id*. Based on this, the *McBrayer I* Court affirmed the circuit court's decision to reverse the Board's decision to grant McBrayer parole. *Id*.

In 2019, the *McBrayer III* Court concluded that "[n]othing ha[d] materially changed" with respect to McBrayer's parole plan. Specifically, the *McBrayer III* Court held as follows:

> According to the May 1, 2018 QMHPE, McBrayer stated that he did not want to live in Macomb County "due to proximity of his victim." Yet the Board again plans to place McBrayer in Macomb County; in particular, he will be placed initially in housing in Clinton Township that is relatively near the victim's apparent residence. Although the Board states that physical location is not the only part of a relapse prevention plan, this does not mean that physical location is irrelevant, particularly in this case given that both the victim and McBrayer himself do not want him to be placed in Macomb County. [*McBrayer III*, unpub op at 5-6 (footnotes omitted).]

We again conclude that McBrayer has failed to present a suitable and realistic parole plan. Indeed, despite McBrayer's past concerns about remaining in the area where the victim lives and despite his desire to remove himself from areas where children would likely be present, the Board intended to release McBrayer to a hotel in Auburn Hills in December 2020. Additionally, McBrayer intends to work for a company that is located in Waterford. Thus, McBrayer plans to live and work in a county that is adjacent to Macomb County, where the victim continues to reside. Additionally, McBrayer would not have been precluded from entering Macomb County while on parole. Rather, McBrayer was only required to obtain permission to enter Macomb County. Consequently, the Board abused its discretion by concluding that substantial and compelling reasons did not exist to depart from the parole guidelines given that McBrayer failed to present a suitable and realistic parole plan.[3]

---

[2] "McBrayer's transfer to Louisiana was denied by the Interstate Commission for Adult Offender Supervision" "because the resident at the address provided by McBrayer stated that she did not know him." *McBrayer I*, unpub op at 2, 5.

[3] We note that McBrayer argues that he was successful on parole in the past, thereby demonstrating that his "relapse prevention plan was strong." However, as noted by this Court in *McBrayer III*:

> It is important to note that, for most of the period that McBrayer was on parole during the identified timeframe, McBrayer's parole was under continual

Additionally, it is clear from the record that the victim continues to suffer physical, mental, and emotional harm as a result of McBrayer's repeated sexual assaults. As already stated, the victim contracted a sexually transmitted disease from McBrayer, she has required surgeries, and she continues to have issues with her bowels. The victim was diagnosed with post-traumatic stress disorder in 2013, for which she requires extensive treatment. Record evidence also supports that McBrayer threatened to "kill anyone who helped put him in prison," which causes the victim to fear for herself and for her family given McBrayer's employment history in law enforcement and his extensive background in martial arts.

In sum, like the Courts in *McBrayer I* and *McBrayer III*, we conclude that the parole guidelines scores did not take into account the nuances of McBrayer's severe abuse of the victim, the persistent and continued mental and physical impact of the abuse, and McBrayer's failure to present a suitable and realistic parole plan.[4] In so concluding, we are not substituting our judgment for that of the Board. Instead, we are taking into consideration the fact that the various parole guidelines scores did not take into account the nuances of this matter. See *In re Parole of Elias*, 294 Mich App at 522 ("The Legislature recognized . . . that in some circumstances the parole guidelines fail to take into account adequate information."). Because substantial and compelling reasons existed to deny parole, we affirm the circuit court.[5]

Affirmed in both dockets.

/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

appellate review by the circuit court, this Court, or our Supreme Court. Such ongoing appellate scrutiny will not exist if McBrayer, whose parole release was stayed pending this appeal, is released after appellate review of the 2018 Board decision. [*McBrayer III*, unpub op at 6 n 6.]

[4] We note that the Board argues that the prosecutor improperly requests that this Court apply the doctrines of res judicata and collateral estoppel. However, because the prosecutor acknowledges that these doctrines are not applicable in this case and because we have not applied them, it is not necessary to consider this argument.

[5] We acknowledge that McBrayer and the Board challenge certain discrete aspects of the circuit court's decision. However, even assuming that McBrayer and the Board are correct, we nonetheless affirm the circuit court. See *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A . . . court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").