*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Parole of JERRY MERLE EASTMAN.

KENT COUNTY PROSECUTOR,

        Appellee,

v

JERRY MERLE EASTMAN,

        Appellant.

UNPUBLISHED
November 10, 2022

No. 361789
Kent Circuit Court
LC No. 21-009687-AP

Before: MURRAY, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Appellant Jerry Merle Eastman appeals by leave[1] granted the circuit court's order reversing the decision of the Parole Board (the "Board") to grant parole. We reverse and remand.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In February 2015, Eastman pleaded *nolo contendere* to one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). He was sentenced to 7 to 100 years' imprisonment for the CSC-I conviction and to 5 to 15 years' imprisonment for the CSC-II conviction.

In 2021, the Board granted Eastman parole finding reasonable assurances existed that he would not become a menace to society or to the public safety. The Board based its decision on several factors. First, Eastman's parole-guideline score was +5, placing him in the "high-probability" of parole category. The Board reviewed Michigan Department of Correction's ("DOC") evaluation reports of Eastman that assessed him as "low risk," and "moderate risk" of

---

[1] *In re Parole of Jerry Merle Eastman*, unpublished order of the Court of Appeals, entered July 11, 2022 (Docket No. 361789).

recidivism. The Board also considered that Eastman had no disciplinary actions in prison, had demonstrated appropriate employment if he were to be released, and had considerable family support as indicated by the numerous letters it had received from Eastman's family, and had completed his required programming.

Despite this, the Qualified Mental Health Professional Evaluation ("QMHP") noted concern about Eastman's willingness to take responsibility for his actions:

> Per the PSI, Mr. Eastman and his wife, Kathy Eastman molested their grandson beginning when he was four years old.

> It is important to note that Mr. Eastmans [sic] description of the events differs from the PSI. Mr. Eastman states that he knew that his wife (now deceased) was molesting the victim, and that his crime is not reporting it. He denies participating in the abuse directly. He states that he "walked in" on his wife and grandson one time, but he believes it may have happened twice.

> According to the PSI however, the victim estimated that the abuse occurred on 5 or 6 separate occasions over a period of at least several years. The victim reported the abuse at age 13. The victim states that both Mr. and Mrs. Eastman would rub his penis and buttocks. The victim also stated that they both put their mouths on his penis as well. He stated that while one grandparent was abusing him, the other would watch. Mr. Eastman was also accused of forcing his grandson to touch his erect penis. The grandson also reports that on one occasion, Mr. Eastman tried to persuade him to put his mouth on his penis. The victim refused. The victim was forced to put his hand down his grandmothers [sic] pants and touch her vagina. The victim was also instructed to put his finger in her anus, but he refused.

> Since Mr. Eastmans [sic] account was so different from the PSI, [the evaluator] asked him why he thought the victim would also accuse him of sexual abuse. Mr. Eastman states that he believes both the victims [sic] mother . . . and his step-daughter (aunt of the victim) coached him to lie.

> When the Eastmans were arrested for this offense, other family members made statements to law enforcement that they had also been sexually abused by the pair. This included Mr. Eastman's stepdaughter, as well as 3 of his wifes [sic] nieces. Mr. Eastman neither admits nor denies that information.

After consideration of these factors, the Board granted parole with a number of conditions, including completion of sex-offender treatment that had been waived by the DOC.

The prosecutor appealed the Board's grant of parole, arguing that the Board's decision to grant parole was an abuse of its discretion because Eastman had minimized his actions and did not complete sex-offender treatment while in prison. The prosecutor alleged that these two factors demonstrated he would continue to be "a menace to society" if released. The prosecutor also questioned the importance of the letters in support of Eastman, noting his family believed Eastman was innocent which suggested there was "significant" concern about Eastman's family network. The circuit court agreed with the prosecutor's reasoning, stating: "[T]he refusal to accept

responsibility for one's actions and lack of any sex offender training makes this a dangerous combination." The circuit court then opined that this made "the matter open and shut." On this basis, the circuit court concluded that the Board had abused its discretion and reversed the Board's decision to grant parole. This appeal followed.

## II. LAW AND ANALYSIS

Eastman argues the Board did not abuse its discretion in granting parole. He also contends the circuit court erred in reversing the Board's decision because the circuit court impermissibly substituted its own judgment for that of the Board. We agree.

## A. STANDARD OF REVIEW

This Court reviews the circuit court's decision de novo. See *In re Parole of Wilkins*, 506 Mich 937, 937; 949 NW2d 458 (2020) ("It is the judgment of the Parole Board, not the circuit court, that is entitled to deference in this appeal from the decision of an administrative agency."). The Board's decision is entitled to deference, *id.*, and a reviewing court may only reverse the Board's decision where it appears the Board abused its discretion or where there was a "violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation." *In re Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id.* In reviewing a parole decision by the Board, a circuit court may not substitute its judgment for the Board's judgment. *Id.*

## B. LAW AND ANALYSIS

"Prisoners do not enjoy a constitutional or inherent right to be conditionally released from a sentence that is validly imposed." *People v Grant*, 329 Mich App 626, 637; 944 NW2d 172 (2019). Under MCL 791.233(1)(a), "[a] prisoner must not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." The Board's decision to grant or deny parole is largely discretionary. *In re Elias*, 294 Mich App at 521. This discretion is not without limits and the Board must also consider "[s]tatutorily mandated parole guidelines" and "comprehensive regulatory parole guidelines." *Id.* at 512, 514.

Under MCL 791.233e(2), the Board is required to consider:

> (a) The offense for which the prisoner is incarcerated at the time of parole consideration.

> (b) The prisoner's institutional program performance.

> (c) The prisoner's institutional conduct.

> (d) The prisoner's prior criminal record. As used in this subdivision, "prior criminal record" means the recorded criminal history of a prisoner, including all misdemeanor and felony convictions, probation violations, juvenile adjudications

for acts that would have been crimes if committed by an adult, parole failures, and delayed sentences.

> (e) Other relevant factors as determined by the department, if not otherwise prohibited by law.

DOC "regulations further direct the Board to consider 'all relevant facts and circumstances, including the prisoner's probability of parole as determined by the parole guidelines . . . .' " *In re Spears*, 325 Mich App 54, 60-61; 922 NW2d 688 (2018); see also Mich Admin Code, R 791.7715(1). Relevant here, the Board may consider a prisoner's "[c]ompletion of recommended programs" and "willingness to accept responsibility for past behavior." Mich Admin Code, R 791.7715(2)(b)(*iii*) and (d)(*i*).

A potential "parolee is evaluated under the guidelines and scored with respect to each guidelines category." *In re Parole of Johnson*, 219 Mich App 595, 599; 556 NW2d 899 (1996). "These scores are then aggregated to determine a total guidelines score." *Id*. The Board uses that score "to fix a probability of parole determination for each individual on the basis of a guidelines schedule." *Id*. "Prisoners are categorized under the guidelines as having either a high, average, or low probability of parole." *Id*. "A prisoner with a score of +3 or greater merits placement in the high-probability category . . . ." *In re Elias*, 294 Mich App at 518.

At the time Eastman was convicted, MCL 791.233e(6)[2] stated:

> The parole board may depart from the parole guideline[s] by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing.

"A substantial and compelling reason is an objective and verifiable reason that keenly or irresistibly grabs our attention; is of considerable worth in deciding the length of a sentence; and exists only in exceptional cases." *People v Young*, 276 Mich App 446, 449-550; 740 NW2d 347 (2007) (quotation marks and citations omitted).

Here, DOC assessed Eastman with a parole-guideline score that provided for a "high-probability" of parole. Therefore, the Board was required to grant Eastman parole, unless there

---

[2] This statute was amended December 12, 2018. 2018 PA 339. The most recent version of MCL 791.233e(6) requires that any departure by the Board from the parole guidelines be based on "substantial and compelling *objective* reasons stated in writing." (Emphasis added.) Further, MCL 791.233e(7) sets forth the circumstances in which the Board may depart from the guidelines with respect to a prisoner with a high-probability of parole. These amendments, however, do not apply in this case because "[s]ubsections (6), (7), and (8), as amended or added by 2018 PA 339, apply only to prisoners whose controlling offense was committed on or after December 12, 2018." MCL 791.233e(14), as amended by 2018 PA 339. It is undisputed Eastman's crimes were committed before these amendments became effective.

were "substantial and compelling reasons" to overcome this presumption. MCL 791.233e(6). Importantly, the prosecution has not offered any alternative parole-guideline score that would remove the presumption. Instead, the prosecution opines that Eastman's minimization in his abuse and his failure to complete sex-offender treatment while incarcerated provide the necessary substantial and compelling reasons to overcome the presumption and deny parole.

Here, we disagree that Eastman's failure to complete sex-offender treatment while in prison is a basis to overcome the statutory presumption for parole. We note that a DOC evaluation of Eastman assessed him at low risk for sexual recidivism. The Board explains on appeal that the DOC had waived sex-offender treatment for Eastman because he was assessed as a low risk for sexual recidivism. In other words, Eastman was not permitted to enroll in this treatment while incarcerated. Based on these facts, the Board was not required to deny parole indefinitely, or until the DOC offered a program that it had previously determined that Eastman was ineligible to take. Rather, the Board appears to have exercised its broad discretion by requiring the same treatment program as a condition of parole.[3] Considering the deference we must give the Board's parole-decision process, we cannot say the Board abused its discretion.

We are therefore left with the question of whether Eastman's refusal to take full accountability for the abuse, by itself, amounts to a substantial and compelling reason to deny parole.[4] We conclude that Eastman's minimization standing alone does not amount to a substantial and compelling reason to deviate from the presumption of parole.

We first note that Eastman's minimization is a factor already considered in the MDOC decision-making process. For example, "mental health variables" are included in calculating the parole-guidelines score. The relevant administrative rule states, in part:

> (3) A parole guideline score shall be based on a combination of the length of time the prisoner has been incarcerated for the offense for which parole is being considered and each of the following factors:
>
> * * *
>
> (g) The prisoner's mental health as reflected by the following:
>
> * * *
>
> (iv) Whether subsequent behavior or therapy suggests that improvement has occurred. [Mich Admin Code, R 791.7716(3)(g)(iv).]

---

[3] See *In re Parole of Hritz*, unpublished per curiam opinion of the Court of Appeals, issued August 13, 2020 (Docket No. 345782), p 8 (concluding the Board "did not abuse its discretion by failing to impose a parole requirement that [DOC] had specifically waived for a prisoner.").

[4] We find some support for this assertion in the circuit court's order in which it stated that the loss of one factor would cause "arguments to be made either way."

Eastman's parole-guideline score sheet indicated that he was "scored -5 due to mental health factors set forth in administrative rule 791.7716, section (g)." This negative assessment for this factor suggests that the DOC had already accounted for Eastman's failure to take full accountability for his criminal conduct.

We also note that whether a prisoner takes accountability for their actions is one of many discretionary factors the Board may properly consider when deciding whether to grant or deny parole. Mich Admin Code, R 791.7715(2)(d)(*i*). Because Eastman's failure to take full accountability was well documented, the Board had full opportunity to consider his accountability as a factor affecting parole.

Again, our review of the Board's decision to grant or deny parole is extremely limited and this Court may only reverse a parole decision where it appears to us the Board's decision was "outside the range of reasonable and principled outcomes." *In re Elias*, 294 Mich App at 538. By requiring sex-offender treatment as part of his parole conditions, the Board addressed one of the concerns relied upon by the circuit court in reversing the grant of parole. Moreover, the question of Eastman's lack of accountability was factored into his overall parole-guidelines score and was among the factors the Board appears to have considered in deciding whether to grant parole. And as already noted, the other factors militated in favoring of granting parole. On this record, the Board did not abuse its discretion in granting parole. Therefore, the circuit court erred in reversing the grant of parole.

Reversed and remanded for an order consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

-6-