*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

*In re* PAROLE OF BRIAN CHARLES LUCKETT.

---

| | |
|---|---|
| MIDLAND COUNTY PROSECUTOR, | UNPUBLISHED |
| | January 26, 2023 |
| Appellee, | |
| | |
| v | No. 361553 |
| | Midland Circuit Court |
| BRIAN CHARLES LUCKETT, | LC No. 21-007695-AP |
| | |
| Appellant, | |
| | |
| and | |
| | |
| PAROLE BOARD, | |
| | |
| Intervenor. | |

---

Before: PATEL, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Appellant, Brian Charles Luckett, appeals by delayed leave granted[1] the circuit court's order reversing the decision of the Parole Board to grant Luckett parole. Luckett argues that the Parole Board properly acted within its discretion when deciding to grant him parole and, consequently, the circuit court impermissibly substituted its judgment for that of the Parole Board. For the reasons set forth in this opinion, we reverse and remand to the circuit court for the limited purpose of reinstating Luckett's parole.

## I. BACKGROUND

---

[1] *In re Luckett*, unpublished order of the Court of Appeals, entered July 12, 2022 (Docket No. 361553).

On October 3, 1990, Luckett encountered the victim—his ex-wife—while she was driving by the house he shared with his mother. She pulled over, and the two had a conversation that eventually turned into an argument. While the victim was still in the car, Luckett pulled out a pocket knife, reached into the car's window, and slit her throat. She was able to get out of the car, and Luckett's mother came outside to perform first aid and contact emergency services. Luckett retrieved a shotgun from his mother's house and walked into a nearby wooded area, where the police found him. The victim was taken to the hospital where she underwent emergency surgery and ultimately survived. However, she was left with a large scar on her neck and permanent changes in her voice.

A jury found defendant guilty of assault with intent to commit murder, MCL 750.83, and he was given a life sentence. After serving 10 years' imprisonment, Luckett became eligible for parole, and he was denied parole multiple times. Luckett again was eligible in 2020, after nearly 30 years' imprisonment. The sentencing judge's successor provided the Parole Board with a written objection to parole. The Midland County Prosecuting Attorney likewise submitted a written objection, and both objections emphasized the facts that Luckett's victim was fortunate to have survived and that Luckett could have been given life without parole if she had not. Following a public hearing, the Parole Board granted parole on March 2, 2021. The prosecution appealed in the circuit court, and the circuit court ultimately concluded that the Parole Board abused its discretion, emphasizing the fact that Luckett allegedly threatened to kill the victim upon his release, holding, in relevant part:

> The Parole Board's decision to grant Mr. Luckett parole without questioning him about his previous threats to kill his victim and her mother upon his release provides no basis from which the Parole Board could have been reasonably assured that Mr. Luckett would not pose a risk to public safety, therefore the decision to parole him to a location within 10 miles of those he had threatened to kill upon his release falls outside the range of principled outcomes and constitutes an abuse of discretion.

This appeal followed.

## II. ANALYSIS

The Parole Board's decision to grant parole is reviewed for abuse of discretion. MCR 7.118(H)(3)(b); *In re Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes. *Elias*, 294 Mich App at 538. This Court reviews de novo a circuit court's decision to reverse the Parole Board's grant of parole because the circuit court's decision involves the proper interpretation and application of statutes, court rules, and administrative guidelines. See *In re Parole of Johnson*, 235 Mich App 21, 22-23; 596 NW2d 202 (1999); see also *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018). This Court defers to the judgment of the Parole Board, not the circuit court. *In re Wilkins*, 506 Mich 937; 949 NW2d 458 (2020). "Importantly, a reviewing court may not substitute its judgment for that of the Board." *Elias*, 294 Mich App at 538-539.

In Michigan, parole is governed by the Corrections Code of 1953, MCL 791.201a *et seq.*, section 34 of which provides in relevant part:

(7) . . . [A] prisoner sentenced to imprisonment for life . . . is subject to the jurisdiction of the parole board and may be placed on parole according to the conditions prescribed in subsection (8) if he or she meets any of the following criteria:

(a) . . . [T]he prisoner has served 10 calendar years of the sentence for a crime committed before October 1, 1992 or 15 calendar years of the sentence for a crime committed on or after October 1, 1992.

\* \* \*

(8) A parole granted to a prisoner under subsection (7) is subject to the following conditions:

\* \* \*

(c) A decision to grant or deny parole to the prisoner must not be made until after a public hearing [is] held . . . . Parole must not be granted if the sentencing judge files written objections to the granting of the parole within 30 days of receipt of the notice of hearing, but the sentencing judge's written objections bar the granting of parole only if the sentencing judge is still in office in the court before which the prisoner was convicted and sentenced. A sentencing judge's successor in office may file written objections to the granting of parole, but a successor judge's objections must not bar the granting of parole under subsection (7). If written objections are filed by either the sentencing judge or the judge's successor in office, the objections must be made part of the prisoner's file. [MCL 791.234.]

Parole cannot be granted "until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." MCL 791.233(1)(a).

A prisoner's score under the parole guidelines provides the Parole Board with an important consideration. "Statutorily mandated parole guidelines form the backbone of the parole-decision process." *Elias*, 294 Mich App at 512. "The parole guidelines are an attempt to quantify the applicable factors that should be considered in a parole decision." *In re Parole of Johnson*, 219 Mich App 595, 599; 556 NW2d 899 (1996). The Legislature elected to defer the promulgation of the parole guidelines to the Department of Corrections, MCL 791.233e(1), and this Court has explained the system which the department promulgated:

To facilitate scoring, the Board separated the parole-guideline factors into eight sections: (1) active sentence, (2) prior criminal record, (3) conduct, (4) statistical risk, (5) age, (6) program performance, (7) mental health, and (8) housing (referring to the prisoner's security level within the prison system). Much like the legislative sentencing guidelines, each parole-guideline section includes a list of factors to be scored and instructions on the point value to be assigned, which include both positive and negative points. After every factor is scored, the scores are aggregated to reach a total section score and ultimately the "Final Parole Guidelines Score." That score is then used to fix a probability of parole

determination for each individual on the basis of a guidelines schedule. Prisoners are categorized under the guidelines as having a high, average, or low probability of parole. A prisoner with a score of +3 or greater merits placement in the high-probability category, a score of -13 or less warrants assignment to the low-probability category, and a score between those figures falls within the average-probability category. [*Elias*, 294 Mich App at 517-518 (quotation marks and citations omitted).]

It is undisputed that Luckett's score was 16, so he was in the high probability range. "The parole board may depart from the parole guidelines by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines." MCL 791.233e(6). However, a departure must be justified by "substantial and compelling objective reasons stated in writing." *Id.* Luckett's parole guidelines score is more than five times higher than the minimum threshold for a high probability of parole. Therefore, absent a substantial and compelling reason not to, the Parole Board had to grant parole. MCL 791.233e(6). Moreover, Luckett made statements at the public hearing in which he expressed significant remorse. These statements were thorough: he said that he knew what he did was wrong, that it caused pain for his parents, that it forced the victim to raise her children by herself, and that he made his children grow up without a father. Luckett testified that he was involved with numerous programs while in prison in order to better himself. Luckett secured both a residence and employment; he testified that he would live with his parents, that he would work at his father's company, and that his brothers were willing to transport him to and from work. Finally, Luckett had served more than 30 years' imprisonment, during which time he had accrued only three misconduct citations.

When it reversed the Parole Board, circuit court relied on conclusions that Luckett had made threats and would be a threat to public safety. MCL 791.233e(7)(d), (j). The circuit

court was alarmed by allegations that Luckett had threatened to kill the victim and did not believe that Parole Board properly investigated this. However, the only reference to threats contained in the record is a vague statement in a case report prepared by the Michigan Department of Corrections at the time of sentencing that "Luckett made threats to kill [the victim] and her mother when he is released from prison." The report did not provide any context pertaining to when, how, or to whom the threats were made. These "threats," specifically that Luckett stated once out of prison he would "finish the job" were furthered by the Midland County Prosecutor in his letter objecting to Luckett's parole. However, the letter does not disclose when this statement was made, who heard the statement, and what steps if any were taken once the statement was made. What is certain is that the circuit court relied heavily on these statements and its conclusion that the Parole Board failed to consider these threats when rendering its decision.

However, the circuit court seemingly presumed that the Parole Board did not consider the threats. Instead of making this assumption, the circuit court was supposed to presume that the Parole Board *did* consider these threats, given that they were included in the information provided to the Board. *In re Elias*, 294 Mich App at 547. In addition, a statement from the victim expressing fear of Luckett from the PSIR prepared at the time of Luckett's original sentencing was read into the record at the public hearing. Thus, the Parole Board is presumed to have been aware of the

information that the circuit court accused it of ignoring, and it expressly entered into the record some of that same information.

Moreover, the record appears to support the idea that the threats were from approximately 30 years ago, at or around the time of the conviction or sentence. Those threats stood in contrast to the expressions of remorse made by Luckett in the QMHP and his statements at the public hearing in which he expressed remorse and accepted responsibility for his conduct. And the public hearing explored issues of whether Luckett continued to be a threat, thereby further undermining the circuit court's conclusion that the Parole Board failed to consider such matters. For instance, Assistant Attorney General Scott Rothermel began questioning Luckett at the public hearing in order to, in his words, "determine the degree of threat you may pose to society should you be released." Immediately thereafter, Luckett began by stating:

> . . . I own up for what I did. I know what I did was wrong. I feel bad for it because I had -- my children I put them through --my family, friends. It didn't only affect me. It's what I done to all their lives, you know. I feel terrible for that, you know. I couldn't imagine growing up without a father in your life, you know.
>
> And this is what I put my ex-wife through, you know, the burden on her. She had to take and raise the kids herself, you know, as far as money-wise, everything, you know. . . . I feel bad. I can't take that back, but what I tried to do is better myself and tried to make up for it, you know, and do good and do what is right, you know.

Luckett later stated that he "blame[d] myself," including for his divorce and the breakdown of his marriage. And as a final statement, Luckett denied harboring any ill intentions toward the victim or others:

> . . . I am no threat to nobody. I have no harm towards anybody. I feel terrible for what I did. I get along with my children good. . . . What I done was terribly wrong and I feel bad for what I did. It's something I wished would never happen, you know, what I put people through, especially me [sic] ex-wife and my children and their families, you know. It's terrible, you know. And I feel bad for it. I know I'm a better person and I would like the chance to prove it.

Accordingly, while the circuit court faulted the Parole Board for failing to consider threats made by Luckett years ago and whether those threats made Luckett a continuing threat to public safety, it appears that the Parole Board did in fact consider the information as well as information regarding Luckett's current attitude toward the victim and her family. And while the circuit court faulted the Parole Board for failing to explore whether Luckett currently posed a threat to the victim, it appears that the Board did question Luckett about his current attitudes and that it tried to determine whether Luckett remained a threat to society. It appears that the Parole Board simply assigned different meaning to the information than did the circuit court. See *In re Spears*, 325 Mich App 54, 67; 922 NW2d 688 (2018) (rejecting the inference that the prosecutor wanted the Court to make about the Parole Board's decision when it appeared that the Board considered the information but reached a different conclusion).

Additionally, there appear to have been factors taken into consideration by the circuit court that do not appear in the record. For example, the circuit court noted that Luckett's brother "voiced concerned [sic] that Mr. Luckett has not changed since he has been in prison and both he and his wife fear Mr. Luckett may attempt to kill the victim and her mother if he is released on parole." This statement is unsupported in the record; the only reference to Luckett's brother contained in the record is a statement in the case report that he and his wife had "some concerns regarding Luckett being released, in particular to the location of his parents. They will not allow Luckett to reside with them." However, in an affidavit submitted to this Court with Luckett's application for leave to appeal, Luckett's brother specifically denied having said that Luckett did not change or that he might attempt to kill the victim.

Both in the circuit court and on appeal the prosecution has raised other reasons in support of its argument that the Parole Board abused its discretion.[2] Most of what the prosecutor objected to do involved a change in the law made by the legislature. At oral arguments before the circuit court, the prosecutor complained that "we wouldn't be here" if the successor judge were still allowed to bar parole. On appeal, the prosecution continues to question the Legislature's decision to divest the successor judge of this power, saying that "[t]his freed the Parole Board to parole whoever it saw fit despite any objection by a successor judge" and that this "change effectively destroyed the very review process upon which" the sentencing judge in this case relied.[3] Disagreement with legislative action does not serve as a persuasive argument on appeal.

Reversed. We remand this case to the circuit court for the limited purpose of reinstating Luckett's parole. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro

---

[2] It is not clear on which of the substantial and compelling reasons articulated in MCL 791.233e(7) the prosecution relies.

[3] The prosecutor's assertions regarding changes in the law are correct. Pursuant to MCL 791.234(8)(c), parole cannot be granted if written objections are submitted to the Parole Board by the sentencing judge, but parole can still be granted if such objections come from the sentencing judge's successor. This was not always true, as the successor judge used to have the same ability to bar parole as the original sentencing judge. However, MCL 791.234(8)(c) was amended effective March 21, 2017, by 2016 PA 354, and this amendment stripped the successor judge of the ability to bar parole.